UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STANLEY ARNOLD,                                 :

        Plaintiff,                                 :

                                                      :      09 Civ. 7299 (GWG)

   -v.-                                          :      <u>OPINION & ORDER</u>

MARTIN GEARY, et al.,                           :

        Defendants.                                :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Stanley Arnold brought this action under 42 U.S.C. § 1983 for false arrest and malicious prosecution arising out of his arrest for trespass and possession of a controlled substance. In an earlier opinion, this Court granted the defendants' motion for summary judgment. Arnold now moves for reconsideration of that decision. For the following reasons, Arnold's motion is denied.

I.     <u>BACKGROUND</u>

      On July 7, 2008, Arnold was arraigned in Yonkers City Court on one count of robbery in the third degree but was released on his own recognizance nine days later. On August 13, 2008, Arnold failed to appear at a scheduled court hearing, and a bench warrant was issued for his arrest. Approximately two weeks later, Officers Geary and Salierno claimed to have observed an individual enter 80 School Street in Yonkers and commit the crimes of trespass and criminal possession of a controlled substance. The officers later identified this individual as Arnold, and on September 12, 2008, they signed a "Warrant-Misdemeanor Information" charging Arnold with those crimes. <u>Arnold v. Geary</u>, 2013 WL 4269388, at *1 (S.D.N.Y. Aug. 16, 2013)

("Arnold I").

That same day, Arnold went to court intending to surrender on the outstanding bench warrant for his robbery arrest.  Because court was closed that day, he went to "central booking of the Yonkers Police Department," where he was booked on both the robbery charge and the two misdemeanor charges, and was incarcerated at the Yonkers City Jail.  At a court appearance held on September 13, 2008, Arnold was ordered remanded.  On September 16, 2008, Arnold appeared in Yonkers City Court, where bail was set on the misdemeanor case in the amount of $1500 and his remand status on the robbery charge was continued.  On March 18, 2009, Arnold was indicted on the robbery charge and remained in remand status.  On April 1, 2009, bail on the robbery charge was set at $25,000.  On May 18, 2009, while Arnold was still in custody, both misdemeanor charges were dismissed by the District Attorney's Office.  On October 13, 2009, Arnold pled guilty to the robbery charge and was sentenced to two to four years imprisonment.  Arnold I, 2013 WL 4269388, at *2.

Arnold's suit against the officers asserts that he was never at School Street on the date that the officers claim he was there, and thus, that he was falsely arrested and maliciously prosecuted on the misdemeanor charges.  Id., at *1-2.  In the decision granting summary judgment, we found that Arnold could not prove his claims for malicious prosecution and false arrest because he could not demonstrate that the defendants' alleged unconstitutional conduct in falsely charging him with the misdemeanors caused Arnold to suffer a deprivation of liberty. Id., at *7.  On September 16, 2013, Arnold filed the instant motion for reconsideration.[1]  Arnold

---

[1] Notice of Motion, filed Sept. 16, 2013 (Docket # 183); Declaration in Support of Motion for Reconsideration, filed Sept. 22, 2013 (Docket # 186); Memorandum of Law in Support of Motion for Reconsideration, filed Sept. 22, 2013 (Docket # 187) ("Pl. Mem."); Defendants' Memorandum of Law in Opposition of Plaintiff's Motion for Reconsideration, filed

requests that we reconsider our grant of summary judgment because our judgment "demonstrates clear error of law for failing to apply the proper standard of proximate cause on false arrest and malicious prosecution claims under § 1983 . . . and for erroneously determining that plaintiff was in custody on prior charges." Pl. Mem. at 2.

II.     LAW GOVERNING MOTIONS FOR RECONSIDERATION

While plaintiff's notice of motion states that his motion arises under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e), we look to Local Civil Rule 6.3 and case law arising under it for the substance of the standard to be applied since the standards for a motion for reconsideration under Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3 are identical. See, e.g., Regan v. Conway, 768 F. Supp. 2d 401, 408 (E.D.N.Y. 2011). Local Civil Rule 6.3 provides that a party moving for reconsideration must set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Thus, "[a] motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." Lent v. Fashion Mall Partners, L.P., 243 F.R.D. 97, 98 (S.D.N.Y. 2007) (citations omitted). "[A] party may not advance new facts, issues or arguments not previously presented to the Court." Davey v. Dolan, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007) (citation and internal quotations marks omitted) (alteration in original). Nevertheless, reconsideration may be granted because of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.) (citation and internal quotation marks

---

Oct. 3, 2013 (Docket # 188) ("Def. Mem."); Plaintiff's Memorandum of Law in Reply, filed Oct. 10, 2013 (Docket # 189) ("Reply Br.").

omitted), cert. denied, 506 U.S. 820 (1992).

Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and internal quotation marks omitted). The reconsideration rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Mikol v. Barnhart, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (citation and internal quotation marks omitted). A narrow application of the rule not only "helps to ensure the finality of decisions" but also "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

III.     DISCUSSION

Arnold argues that the decision granting summary judgment amounted to "clear error" for two reasons. First, Arnold contends that we applied the wrong legal standard in finding that there was no genuine issue of material fact as to whether the defendants' alleged wrongdoing was the cause of Arnold's deprivation of liberty. Pl. Mem. at 3-5. Second, Arnold argues that we erred as a matter of law in finding that Arnold suffered a deprivation of liberty when placed in police custody on the felony robbery charge, because Arnold's liberty was not impaired until the presiding judge set the remand condition on the robbery charges. Id. at 5-6.

For any claim brought under 42 U.S.C. § 1983, the plaintiff must establish that the defendant's misconduct was the proximate cause of the plaintiff's injury. See, e.g., Martinez v. California, 444 U.S. 277, 285 (1980); Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998); Deskovic v. City of Peekskill,

4

673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) (citing cases).  In addition, the plaintiff must show that the defendant's misconduct was the "but for" cause or cause "in fact" of the injury.  See, e.g., Zahrey v. Coffey, 221 F.3d 342, 352 n.8 (2d Cir. 2000) (defendant not liable where "'but for' causation could be claimed to be lacking"); accord Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012); Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008); Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 608 (6th Cir. 2007).

As was noted in Arnold I, to substantiate claims for either malicious prosecution or false arrest, the plaintiff must prove that the defendant's tortious conduct caused the plaintiff to suffer a deprivation of liberty.  Arnold I, 2013 WL 4269388, at *4.  We found that Arnold could not show that the misdemeanor arrest deprived him of liberty because he was in custody on the robbery charges for the entire period that he was in custody on the misdemeanor charges.  Id., at *4-5.  Arnold contends that summary judgment was improper in this case for the following reason:

> Differing from the burden of proof on § 1983 claims generally, a plaintiff who alleges that a police officer utilized false evidence establishes an issue of fact as to proximate causation for false arrest and malicious prosecution under § 1983 if it is reasonably foreseeable that the defendant's use of false evidence will contribute to an independent decision of a judge or third-person to deprive the plaintiff of his liberty.

Pl. Mem. at 3.  Arnold argues that because false evidence was used to obtain the misdemeanor arrest warrant, and because the judge setting the remand condition on the robbery charge was aware of that arrest, defendants are not entitled to summary judgment.

We do not disagree with Arnold's characterization of the law governing proximate cause.  As was noted in Zahrey, and reaffirmed in Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir. 2007), "defendants in section 1983 cases are liable for consequences caused by reasonably

5

foreseeable intervening forces." Thus, where a plaintiff has otherwise shown a "chain of causation," there is no reason why that chain "should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." Zahrey, 221 F.3d at 352. This principle is illustrated by Higazy, in which the plaintiff alleged that the defendant's proffering of a false confession was the basis for a magistrate judge's decision to detain the plaintiff at a bail hearing. 505 F.3d at 170. The court in Higazy rejected the defendant's argument that the prosecutor's act of presenting the evidence or the magistrate judge's action in detaining the plaintiff broke the causal chain. Id. at 175-76. Instead, it ruled that "a fact finder could conclude that [the defendant] could reasonably have foreseen that a coerced confession would be used against [the plaintiff] and would lead to [the plaintiff's] detention." Id. at 177.

  Arnold's situation is far different from that of the plaintiff in Higazy, however, because Arnold was held in custody on the robbery charge for the entire period that he was held on the misdemeanor charges. See Arnold I, 2013 WL 4269388, at *3. Unlike Higazy, where the plaintiff presented evidence that the judge's decision to deny bail was based on the introduction of the coerced statement at the bail hearing, see Higazy, 505 F.3d at 178, Arnold has only been able to show that the remanding judge was aware of the misdemeanor charges, not that the decision to remand was at all influenced by those charges, Arnold I, 2013 WL 4269388, at *6. As we noted, "the mere fact that an event occurred after another event is not by itself enough to show causation." Id.

  The problem for Arnold is not, as Arnold implicitly argues, that the Court views the judge's action of setting remand on the robbery condition as an "intervening force," see Bertuglia v. City of New York, 839 F. Supp. 2d 703, 722 (S.D.N.Y. 2012), or an "independent

decision," see Higazy, 505 F.3d at 183, that breaks the causal change between the use of the false evidence and Arnold's ultimate incarceration on the robbery charge. To the contrary, in Arnold I we never reached the issue of whether the judge's decision to remand Arnold was an intervening cause. This is because Arnold never produced any evidence that the judge's decision to remand him for the robbery charge in any way resulted from the existence of the pending misdemeanor charges. As we stated in Arnold I:

> unless the jury resorted to pure speculation, there is no evidence from which it could find that the existence of the allegedly false misdemeanor charge actually caused the presiding judge to order Arnold to be remanded [on the robbery charge] rather than released on some other bail status whose conditions he might have met.

2013 WL 4269388, at *6. In other words, Arnold failed to produce any evidence that would allow a reasonable jury to find the misdemeanor charges were the "but for" cause of the judge's decision to remand him for the felony robbery charge. Or, to invoke the phrase used in Zahrey, Arnold did not provide evidence of a "chain of causation" that connects the misdemeanor charges to the remand on the robbery charge. While we cannot say it is impossible that the existence of the misdemeanor charges influenced the judge's decision as to the conditions of release to be set on the robbery charge, it is plain that a jury presented with the evidence now before this Court could only resort to speculation to conclude that, had it not been for the misdemeanor charges, the judge would have set a bail condition on the robbery charge that Arnold would have met or that the judge would have released Arnold on that charge.

None of the cases cited by Arnold in support of his argument are of any help to him since in each case, there was evidence of a "but for" connection between the false evidence and the harm alleged by the plaintiff. See Higazy, 505 F.3d at 179 (defendant FBI agent could be liable under § 1983 if he coerced a confession that was used at the bail hearing for the crime to which

defendant confessed); Zahrey, 221 F.3d at 352 (prosecutor's alleged false evidence was presented to a grand jury, resulting in plaintiff's indictment and arrest); Bertuglia, 839 F. Supp. 2d at 721-22 (defendants falsely told the District Attorney's office that the plaintiff had committed certain theft offenses, as a result of which the plaintiff was arrested).

While a fourth case cited by Arnold, Hernandez v. Wells, 2003 WL 22771982 (S.D.N.Y. Nov. 24, 2003), involves somewhat more complex facts, it is entirely consistent with the Court's ruling here.  In Hernandez, the defendant corrections officer arrested the plaintiff, a parolee, for an assault that allegedly occurred after the defendant confiscated the plaintiff's knife while the plaintiff was visiting an inmate at the prison.  See id., at *1.  The judge ordered the plaintiff held on $5000 bail but the plaintiff was not permitted to post the bail because the New York State Division of Parole ("DOP") placed a "hold" on him as a result of the arrest.  See id., at *10.  The plaintiff was held in custody while the DOP held a preliminary violation hearing and then a final parole revocation hearing.  Id., at *2.  At both hearings, the decisionmakers heard and credited the defendant's testimony as to the alleged assault and sustained the parole violation, which was based on that assault.  Id.  The court in Hernandez rejected the defendant's argument that the DOP's decision to place the parole hold was an intervening act that broke the chain of causation. Id., at *10.  The court recognized that there existed other evidence that may have supported a hold, such as the plaintiff bringing a knife to the jail and the plaintiff's prior history as a parole violator, but found that "a reasonable jury could conclude that [the defendant] lied about the assault and that his false account played a pivotal role in subjecting [the plaintiff] to police custody and the DOP's parole hold."  Id.  In other words, there was evidence that the false testimony in Hernandez actually caused the plaintiff's deprivation of liberty since the hold was placed because of the allegedly false assault charge and because of the allegedly falsified

8

evidence that was introduced at the parole hearings. Indeed, the defendants in Hernandez "[did] not dispute that [the plaintiff] was taken into custody . . . as a result of [the defendant's] allegations." Id. (emphasis added). In contrast, there is simply no basis — other than mere speculation — on which to conclude that the misdemeanor charge in Arnold's case played any role, let alone "a pivotal role," in the judge's decision to remand Arnold.

We note that even under the test Arnold proposes, he would still fail to satisfy his burden of proof. Based on the evidence before the Court, a reasonable jury could not find that it was "reasonably foreseeable" to the officers that their alleged use of false evidence to obtain an arrest warrant would some day cause Arnold to be incarcerated on a totally unrelated charge.

Arnold's second argument is that one of the premises of the Court's decision – that Arnold was already deprived of his liberty as a result of the robbery charges at the time he was deprived of his liberty on the misdemeanor charges – is incorrect. Pl. Mem. at 5-6. The basis for this argument is that Arnold was being held in the custody of the Yonkers' Police Department for the first two days of his detention before he was brought before a Court and that "the Second Circuit has held a deprivation of liberty does not occur at the time of arrest, but rather when a securing order is ultimately issued." Reply Br. at 2 (citing Zahrey, 221 F.3d at 352); Pl. Mem. at 5. Arnold's contention that he was not deprived of his liberty while being held at the Yonkers City Jail would not seem to help his case at all and the Court is not sure it understands the point of Arnold's argument. In any event, Zahrey does not say what Arnold claims. To the contrary, Zahrey made clear that the liberty of the plaintiff in that case was "impaired" when "after the evidence was both fabricated and used by introducing it in evidence before the grand jury, an indictment was later returned and [the plaintiff] was later arrested." 221 F.3d at 352. Zahrey's characterization of a judge's revocation of the plaintiff's bail as a

9

"further significant impairment" hardly suggests that the curtailment of liberty effectuated by an arrest – or, in Arnold's case, his detention by the Yonkers' Police Department – did not amount to a deprivation of liberty.

IV.   CONCLUSION

For the foregoing reasons, Arnold's motion for reconsideration (Docket # 183) is denied.

SO ORDERED.

Dated: November 7, 2013

New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge